**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF CALIFORNIA**

IN RE: ANGIODYNAMICS, INC., PORT CATHETER PRODCUTS LIABILTY LITIGATION

TINA BANDY

Plaintiff,

vs.

ANGIODYNAMICS, INC.

Defendant.

This Document Relates to:

Civil Action No. 3:24-md-03125-JO-VET

Case No.: '26CV6124 JO VET

MDL No. 3125

JUDGE JUNSOOK OHTA

**COMPLAINT FOR DAMAGES**

**(1) NEGLIGENCE**
**(2) NEGLIGENT-FAILURE TO WARN**
**(3) NEGLIGENT-DESIGN DEFECT**
**(4) NEGLIGENT-MANUFACTURING DEFECT**
**(5) STRICT LIABILITY-FAILURE TO WARN**
**(6) STRICT LIABILITY- DESIGN DEFECT**
**(7) STRICT LIABILITY-MANUFACTURING DEFECT**
**(8) BREACH OF IMPLIED WARRANTY**
**(9) BREACH OF EXPRESS WARRANTY**
**(10) COMMON LAW FRAUD**
**(11) FRAUDULENT CONCEALMENT**
**(12) NEGLIGENT MISREPRESENTATION**
**(13) OREGON UNLAWFUL TRADE PRACTICES ACT**
**(14) GROSS NEGLIGENCE**

**DEMAND FOR JURY TRIAL**

# COMPLAINT

Plaintiff files this Complaint pursuant to CMO No. 1, and is bound by the rights, protections, privileges, and obligations of that CMO. In accordance with CMO No. 1, Plaintiff hereby designates the United States District Court for the State of Oregon as the place of remand as this case may have originally been filed there pursuant to 28 U.S.C. § 1391.

COMES NOW Plaintiff, Tina Bandy, (hereinafter "Plaintiff"), by and through her undersigned counsel, and brings this Complaint against AngioDynamics, Inc., ("Defendant"), and alleges as follows:

1. This is an action for damages arising out of failures relating to Defendant's design, development, testing, assembling, manufacturing, packaging, promoting, marketing, distribution, supplying, and/or selling the defective implantable vascular access device sold under the trade name of SMART Power Injectable Ports (hereinafter "SMART PORT" or "Defective Device").

## PARTIES

2. Plaintiff, Tina Bandy, is an adult resident of Deschutes County, Oregon and claims damages as set forth below.

3. Defendant AngioDynamics, Inc. ("AngioDynamics") is a Delaware corporation with its principal place of business located in Latham, New York. AngioDynamics is engaged in the

business of researching, developing, designing, licensing, manufacturing, distributing, supplying, selling, marketing, and introducing into interstate commerce, either directly or indirectly through third parties or related entities, its medical devices, including the Smart Port.

**JURISDICTION AND VENUE**

4. This Court has subject matter jurisdiction over the parties pursuant to 28 U.S.C. §1332(a)(1) because the parties are citizens of different states and the amount in controversy exceeds $75,000.00, exclusive of interest and cost.

5. Venue is proper in this Court pursuant to 28 U.S.C. §1391(b)(2) by virtue of the facts that (a) a substantial part of the events or omissions giving rise to the claims occurred in this District and (b) Defendant's products are produced, sold to and consumed by individuals in the State of Oregon, thereby subjecting Defendant to personal jurisdiction in this action and making them all "residents" of this judicial District.

6. Defendant has and continues to conduct substantial business in the State of Oregon and in this District, distribute vascular access products in this District, receive substantial compensation and profits from sales of vascular access products in this District, and made material omissions and misrepresentations and breaches of warranties in this District, so as to subject them to *in personam* jurisdiction in this District.

7. Consistent with the Due Process Clause of the Fifth and Fourteenth Amendments, this Court has *in personam* jurisdiction over Defendant because Defendant is present in the State

of Oregon, such that requiring an appearance does not offend traditional notices of fair and substantial justice.

**PRODUCT BACKGROUND**

9. In or about 2009, a company called Navilyst Medical began to market and sell a product called Smart Port Power Injectable Ports.

10. On or about 2012, AngioDynamics acquired Navilyst Medical who became a subsidiary of AngioDynamics.

11. Defendant's Vascular Access Devices were designed, patented, manufactured, labeled, marketed, sold, and distributed by the Defendant at all relevant times herein.

12. The Smart Port is one of several varieties of port/catheter systems that has been designed, manufactured, marketed, and sold by Defendant.

13. According to Defendant, the Smart Port is a totally implantable vascular access device designed to provide repeated access to the vascular system for the delivery of medication, intravenous fluids, parenteral nutrition solutions, and blood products.

14. The intended purpose of the Smart Port is to make it easier to deliver medications directly into the patient's bloodstream. The device is surgically placed completely under the skin and left implanted.

15. The Smart Port is a system consisting of two primary components: an injection port and a polyurethane catheter which includes additives intended to make it radiopaque.

16. The injection port has a raised center, or "septum," where the needle is inserted for delivery of the medication. The medication is carried from the port into the bloodstream through a small, flexible tube, called a catheter, that is inserted into a blood vessel.

17. The Smart Port is indicated for patient therapies requiring repeated access to the vascular system. The port system can be used for infusion of medications, I.V. fluids, parenteral nutrition solutions, blood products, and for the withdrawal of blood samples.

18. The product's catheter is comprised of a polymeric mixture of polyurethane and a barium sulfate radiopacity agent.

19. Barium sulfate is known to contribute to reduction of the mechanical integrity of polyurethane *in vivo* as the particles of barium sulfate dissociate from the surface of the catheter over time, leaving microfractures and other alterations of the polymeric structure and degrading the mechanical properties of the polyurethane.

20. Researchers have shown that catheter surface degradation in products featuring a radiopaque barium sulfate stripe is concentrated at the locus of the stripe.[1]

21. The design of the product at issue in this case includes a catheter with a stripe containing a stripe with a higher concentration of barium sulfate than the rest of the catheter.

---

[1] See Hecker JF, Scandrett LA. Roughness and thrombogenicity of the outer surfaces of intravascular catheters. *J Biomed Mater Res*. 1985;19(4):381-395. doi:10.1002/jbm.820190404

22. According to relevant medical literature, such design is proven to have a higher rate of fracture than catheters without the barium-loaded stripe.

23. The mechanical integrity of a barium sulfate-impregnated polyurethane is affected by the concentration of barium sulfate as well as the heterogeneity of the modified polymer.

24. Upon information and belief, Defendant's manufacturing process in designing and constructing the catheter implanted in Plaintiff involved too high a concentration of barium sulfate particles for the polymer formulation, leading to improperly high viscosity of the admixed polyurethane before polymerization and causing improper mixing of barium sulfate particles within the polymer matrix.

25. This defect in the manufacturing process led to a heterogeneous modified polymer which led to an irregular catheter surface replete with fissure, pits and cracks as well as sections of the catheter lumen which contain more than 30% barium sulfate by weight, reducing the catheter strength at those loci.

26. The roughened catheter surface leads to the collection and proliferation of fibrinous blood products, thereby drastically increasing the risk of biofilm, infection, sepsis, and port erosion.

27. Although the surface degradation and resultant mechanical failure can be reduced or avoided with design modifications (e.g., using a higher grade radiopacity compound and/or

encapsulating the admixed polymer within polyurethane), Defendant elected not to incorporate those design elements into the Smart Port.

28. At all times relevant, Defendant misrepresented the safety of the Smart Port system, and negligently designed, manufactured, prepared, compounded, assembled, processed, labeled, marketed, distributed, and sold the Smart Port system as safe and effective device to be surgically implanted to provide repeated access to the vascular system for the delivery of medications, intravenous fluids, parenteral nutrition solutions, and blood products.

29. At all times relevant to this action, Defendant knew and had reason to know, that the Smart Port was not safe for the patients for whom they were prescribed and implanted, because once implanted the device was prone to fracturing, perforating internal vasculature, and otherwise malfunctioning.

30. At all times relevant to this action, Defendant knew and had reason to know that patients implanted with a Smart Port had an increased risk of suffering life threatening injuries, including but not limited to: death; infection; port erosion; hemorrhage; cardiac/pericardial tamponade (pressure caused by a collection of blood in the area around the heart); cardiac arrhythmia and other symptoms similar to myocardial infarction; severe and persistent pain; and perforations of tissue, vessels and organs, or the need for additional surgeries to remove the defective device.

31. Soon after the Smart Port was introduced to market, Defendant began receiving

large numbers of adverse event reports ("AERs") from health care providers reporting that the Smart Port was fracturing post-implantation and that fractured pieces were migrating throughout the human body, including to the heart and lungs. Defendant also received large numbers of AERs reporting that Smart Port was found to have perforated internal vasculature. These failures were often associated with reports of severe patient injuries such as:

a. hemorrhage.

b. infection/sepsis;

c. port erosion

d. cardia/pericardial tamponade;

e. cardiac arrhythmia and other symptoms similar to myocardial infarction;

f. severe and persistent pain;

g. perforations of tissue, vessels and organs; and

h. upon information and belief, even death.

32. In addition to the large number of AERs which were known to Defendant and reflected in publicly accessible databases, there are many recorded device failures and/or injuries related to the Defendant's implantable port products which were concealed from medical professionals and patients through submission to the FDA's controversial Alternative Summary Reporting ("ASR") program.

33. The FDA halted the ASR program after its existence was exposed by a multi-part

investigative piece, prompting a widespread outcry from medical professionals and patient advocacy groups.[2]

34. Prior to the discontinuation of the ASR program, Defendant reported numerous episodes of failures of their implanted port/catheter products – including numerous episodes of infection – under the ASR exemption, thereby concealing them from physicians and patients.

35. Defendant was aware or should have been aware that the Smart Port had a substantially higher failure rate than other similar products on the market, yet Defendant failed to warn consumers of this fact.

36. Defendant also intentionally concealed the severity of complications caused by the Smart Port and the likelihood of these events occurring.

37. Rather than alter the design of the Smart Port to make it safer or adequately warn physicians of the dangers associated with the Smart Port, Defendant continued to actively and aggressively market the Smart Port as safe, despite their knowledge of numerous reports of infection, port erosion, and associated injuries.

38. Moreover, Defendant concealed—and continue to conceal—their knowledge of the Smart Port's dangerous propensity to precipitate infection and port erosion. Defendant further concealed their knowledge that the catheter design caused these failures and that these failures

---

[2] Christina Jewett, *Hidden Harm: Hidden FDA Reports Detail Harm Caused by Scores of Medical Devices*, Kaiser Health News (Mar. 2019)

cause serious injuries.

39. The conduct of Defendant, as alleged in this Complaint, constitutes willful, wanton, gross, and outrageous corporate conduct that demonstrates a conscious disregard for the safety of Plaintiff. Defendant had actual knowledge of the dangers presented by the Smart Port System, yet consciously failed to act reasonably to:

40. Adequately inform or warn Plaintiff, her prescribing physicians, or the public at large of these dangers;

41. Establish and maintain an adequate quality and post-market surveillance system; or

42. Recall the Smart Port System from the market.

**SPECIFIC FACTUAL ALLEGATIONS AS TO PLAINTIFF**

43. On or about January 9, 2024, Plaintiff underwent placement of the AngioDynamics Smart Port. The device was implanted by Dr. Benjamin English, M.D., at Vascular Interventional Specialists CORA in Bend, Oregon for the purpose of administration of chemotherapy.

44. Defendant, directly or through its agents, apparent agents, servants, or employees designed, manufactured, marketed, advertised, distributed, and sold the Smart Port that was implanted in Plaintiff.

45. Defendant manufactured, sold, and/or distributed the Smart Port to Plaintiff, through her doctors, to be used for delivery of chemotherapy.

46. On or about April 1, 2024, Plaintiff presented to the St. Charles Health Emergency Department in Bend, Oregon with facial swelling and numbness. Plaintiff was diagnosed with a 13.3 cm occlusive venous thrombosis of the right internal jugular vein, extending from the C4 level to the superior vena cava around the tunneled Smart Port. Plaintiff was placed on anticoagulants to treat this thrombosis on or about April 1, 2024.

47. On or about June 4, 2024, the defective device was removed by Dr. Caitlyn T. Truong, MD at St. Charles Health System in Bend, Oregon.

48. Plaintiff was unaware at the time of explant that the issues with her port were not a generalized risk. She was told by her physicians that her port had a large thrombosis related to her Smart Port, but she did not discover the heightened risk of thrombosis was related to the Smart's port defect until the summer of 2026 when she saw a television ad that detailed potential defects in the port catheter products. It was at this point that the Plaintiff first realized the thrombosis which occurred with her port may potentially have been caused by someone else's wrongdoing.

49. At all times relevant to her implant, thrombosis, surgeries and treatment, Plaintiff resided in Redmond, Oregon.

50. At all times, the Smart Port was utilized and implanted in a manner foreseeable to Defendant, as Defendant generated the instructions for use and created procedures for implanting the product.

51. The Smart Port implanted in Plaintiff was in the same or substantially similar condition as when it left the possession of Defendant and in the condition directed by and expected by Defendant.

52. Plaintiff and her physicians foreseeably used and implanted the Smart Port and did not misuse or alter the Smart Port in an unforeseeable manner.

53. Defendant advertised, promoted, marketed, sold, and distributed the Smart Port as a safe medical device when Defendant knew or should have known the Smart Port was not safe for its intended purposes and that the product could cause serious medical problems.

54. Defendant had sole access to material facts concerning the defective nature of the Smart Port product and its propensity to cause serious and dangerous side effects.

55. In reliance on Defendant's representations, Plaintiff's doctors were induced to, and did use the Smart Port.

56. As a result of having the Smart Port implanted, Plaintiff has experienced significant mental and physical pain and suffering, has undergone additional surgeries, and has suffered financial or economic loss, including, but to limited to, obligations for medical services and expenses.

57. Defendant's Smart Port was marketed to the medical community and to patients as a safe, effective, reliable, medical devices implanted by safe and effective, minimally invasive surgical techniques for the treatment of medical conditions, and as safer and more effective as

compared to the traditional products and procedures for treatment and other competing Vascular Access Devices.

58. The Defendant has marketed and sold the Defendant's Smart Port to the medical community at large and patients through carefully planned, multifaceted marketing campaigns and strategies. These campaigns and strategies include, but are not limited to, direct to consumer advertising, aggressive marketing to health care providers at medical conferences, hospitals, private offices, and/or group purchasing organizations, and include a provision of valuable consideration and benefits to the aforementioned.

59. The injuries, conditions, and complications suffered due to Defendant's Smart Port include, but are not limited to, fracture and leakage; necrosis; infection; port erosion; blood clots; cardiac/pericardial tamponade; cardiac arrhythmia and other symptoms similar to myocardial infarction; severe and persistent pain; perforations of tissue, vessels and organs; and even death.

60. Defendant was negligent toward Plaintiff in the following respects:

a. Defendant failed to design and establish a safe, effective procedure for removal of Smart Port; therefore, in the event of a failure, injury, or complications it is difficult to safely remove Smart Port.

b. Defendant provided incomplete, insufficient, and misleading information to physicians in order to increase the number of physicians using Smart Port for the purpose of increasing their sales. By so doing, Defendant caused the dissemination of inadequate and misleading information to patients, including the Plaintiff.

61. The Smart Port was utilized and implanted in a manner foreseeable to Defendant.

62. The Smart Port implanted into Plaintiff was in the same or substantially similar condition as when it left the possession of the Defendant and in the condition directed by the Defendant.

63. At the time of her operation, Plaintiff was not informed of, and had no knowledge of the complaints, known complications and risks associated with Smart Port, including, but not limited to, the extent of seriousness of the danger of infection and port erosion.

64. Plaintiff was never informed by Defendant of the defective and dangerous nature of Smart Port.

65. At the time of her implant, neither Plaintiff nor Plaintiff's physicians were aware of the defective and dangerous condition of the Smart Port.

66. Plaintiff has suffered and will continue to suffer physical pain and mental anguish.

67. Plaintiff has also incurred substantial medical bills and has suffered loss of other monies due to the defective product that was implanted in her body.

**COUNT I: NEGLIGENCE**
(Against Defendant AngioDynamics, Inc.)

68. Plaintiff incorporates by reference the preceding paragraphs of this Complaint as if fully set forth herein.

69. The Defendant owed Plaintiff a duty to exercise reasonable care when designing, manufacturing, marketing, advertising, distributing, selling and conducting post-market surveillance of the Smart Port.

70. The Defendant failed to exercise due care under the circumstances and therefore breached this duty by:

a. Failing to properly and thoroughly test the Smart Port before releasing the device to market, and/or failing to implement feasible safety improvements;

b. Failing to properly and thoroughly analyze the data resulting from any pre-market testing of the Smart Port;

c. Failing to conduct sufficient post-market testing and surveillance of the Smart Port;

d. Failing to comply with state and federal regulations concerning the study, testing, design, development, manufacture, inspection, production, advertisement, marketing, promotion, distribution, and/or sale of the Smart Port;

e. Designing, manufacturing, marketing, advertising, distributing, and selling the Smart Port to consumers, including Plaintiff, without an adequate warning of the significant and dangerous risks of the Smart Port and without proper instructions to avoid the harm which could foreseeably occur as a result of using

the device;

f. Failing to exercise due care when advertising and promoting the Smart Port; and

g. Negligently continuing to manufacture, market, advertise, and distribute the Smart Port after Defendant knew or should have known of its adverse effects.

71. As a direct, actual, and proximate cause of the Defendant's actions, omissions, and misrepresentations, Plaintiff has suffered, and will continue to suffer, severe injuries and complications which are permanent and lasting in nature, emotional distress, loss of the capacity for the enjoyment of life, medical expenses, and economic loss as alleged herein. These damages have occurred in the past and will continue into the future.

72. In performing the foregoing acts, omissions, and misrepresentations, Defendant acted grossly negligent, fraudulently, and with malice so as to justify an award of punitive and/or exemplary damages.

**COUNT II: NEGLIGENCE – FAILURE TO WARN**

(Against Defendant AngioDynamics, Inc.)

73. Plaintiff incorporates the preceding paragraphs as if set out fully herein.

74. Defendant owed Plaintiff and Plaintiff's healthcare providers a duty to disclose whether the Smart Port had been adequately tested and of the substantial dangers and/or potential risks associated with the Device when used or misused in a reasonably foreseeable manner.

75. Defendant knew or should have known that the users of the Smart Port would not realize and reasonably could not realize that the Smart Port was not adequately tested, or the substantial danger or potential risks associated with the Smart Port when used or misused in a reasonably foreseeable manner.

76. Defendant failed to adequately warn Plaintiff's prescribing physicians and Plaintiff that the Smart Port was not adequately tested or of the substantial danger and/or potential risks associated with the Smart Port when used or misused in a reasonably foreseeable manner.

77. In addition, Defendant failed to adequately warn Plaintiff's prescribing physicians and Plaintiff as to the points, including, but not limited to the following:

a. The Smart Port was inherently dangerous and defective, unfit and unsafe for its intended and reasonably foreseeable use and did not meet or perform to the user's intended expectations;

b. Patients implanted with the Smart Port had an increased risk of suffering dangerous Smart Port-related complications, including, but not limited to: death, hemorrhage, catheter fracture and cardiac migration, thromboembolism, serious infections, cardiac arrhythmia, severe and persistent pain, and perforations of tissue, vessels and organs, and/or the need for additional surgeries to remove the defective Smart Port, or its catheter, or its fragments.

c. The Smart Port posed a significant and higher risk than other similar devices of device failure, catheter fracture and cardiac migration, and resulting serious injuries;

d. The Smart Port could cause serious and life-threatening injuries even when the Smart Port is placed correctly;

e. The inadequate research and testing of the Smart Port;

f. The true quantitative or qualitative risks and the true extent of catheter erosion, catheter fracture cardiac migration, and other serious and life-threatening injuries associated with the Smart Port;

g. The risk of catheter erosion, catheter fracture and cardiac migration, and the development of the Smart Port-related or Smart Port's catheter fragment-related emboli was significantly higher in cases where the Smart Port stays in place for longer than a year;

h. The Smart Port should be closely monitored in cases where it is left in place for over a year;

i. The Smart Port raised the risk of catheter erosion, catheter fracture and cardiac migration, and other serious and life-threatening adverse events by virtue of the catheter design and composition; and

j. The number and nature of serious and life-threatening adverse events related to the Smart Port.

78. A reasonable manufacturer, distributor, and/or seller, under the same or similar circumstances, would have adequately warned Plaintiff's healthcare providers and Plaintiff that

the Smart Port was not adequately tested and/or of the substantial danger and/or of the potential risks associated with the Smart Port.

79. Plaintiff would not have consented to be implanted with the Smart Port if Defendant had provided adequate warnings that the Smart Port was not adequately tested or of the substantial danger, and/or of potential serious and life-threatening risks associated with the Smart Port, including, but not limited to, the increased risk of catheter fracture and cardiac migration, and the development of the Smart Port catheter fragment- related emboli.

80. Upon information and belief, Plaintiff's healthcare providers would not have prescribed and implanted the Smart Port into Plaintiff if Defendant had provided adequate warnings that the Smart Port was not adequately tested or of the substantial danger and/or of potential risks associated with the Smart Port, including, but not limited to, the increased risk of catheter fracture and cardiac migration, and the development of the Smart Port catheter fragment-related emboli.

81. As a direct and proximate result of Defendant's failure to warn, Plaintiff was injured and has suffered, and will continue to suffer, severe physical pain and injuries which are permanent and lasting in nature, emotional distress, loss of capacity for the enjoyment of life, medical expenses, and economic loss as alleged herein. These damages have occurred in the past and will continue into the future.

## COUNT III: NEGLIGENCE – DESIGN DEFECT

(Against Defendant AngioDynamics, Inc.)

82. Plaintiff incorporates the preceding paragraphs as if set out fully herein.

83. Defendant owed Plaintiff a duty to exercise reasonable care when designing,

manufacturing, labeling, marketing, advertising, distributing, selling, and conducting post-market surveillance of the Smart Port.

84. Defendant breached its duty of care and were negligent in the designing, manufacturing, and/or supplying of the Smart Port.

85. At the time the Smart Port left Defendant's control, safer alternative designs—that would have prevented or reduced the substantial danger and/or potential risks associated with the Device—were commercially, technologically, and scientifically attainable and feasible.

86. As a direct and proximate result of Defendant's design defect as it concerns the Smart Port at issue, Plaintiff was injured and has suffered, and will continue to suffer, severe physical pain and injuries which are permanent and lasting in nature, emotional distress, loss of the capacity for the enjoyment of life, medical expenses, and economic loss as alleged herein. These damages have occurred in the past and will continue into the future.

## COUNT IV: NEGLIGENCE – MANUFACTURING DEFECT

(Against Defendant AngioDynamics, Inc.)

87. Plaintiff incorporates the preceding paragraphs as if set out fully herein.

88. Defendant operated under design and manufacturing specifications for the Smart Port, which included appropriate material content, strength, size, durability appearance, resistance levels, etc., to ensure that the devices did not deviate from their intended design and their established manufacturing specifications. The manufacturing process was intended to identify any end-product products that did not meet Defendant's specifications.

89. Defendant owed Plaintiff a duty to exercise reasonable care when manufacturing, setting design and manufacturing specifications, exercising quality control over, distributing, and selling the Smart Port.

90. Defendant breached this duty and failed to exercise reasonable care when manufacturing, setting design and manufacturing specifications, exercising quality control over, distributing, and selling the Smart Port that was implanted into Plaintiff. This caused the Smart Port that was implanted into Plaintiff to deviate from its intended design and/or vary from its intended manufacturing specifications in that the Smart Port at issue did not have the specified material content, size, durability, and strength.

91. The defective and dangerous condition of the Smart Port implanted into Plaintiff existed at the time it left Defendant's possession. The Smart Port at issue differed from Defendant's intended result and/or from other ostensibly identical units of the same product line.

92. As a direct and proximate result of Defendant's negligent manufacturing and the resulting manufacturing defect, Plaintiff was injured and has suffered and will continue to suffer, severe physical pain and injuries which are permanent and lasting in nature, emotional distress, loss of capacity for the enjoyment of life, medical expenses, and economic loss as alleged herein. These damages have occurred in the past and will continue into the future.

## <u>COUNT V: STRICT PRODUCTS LIABILITY – FAILURE TO WARN</u>

(Against Defendant AngioDynamics, Inc.)

93. Plaintiff incorporates by reference the preceding paragraphs of this Complaint as if

fully set forth herein.

94. At the time Defendant designed, manufactured, prepared, compounded, assembled, processed, marketed, labeled, distributed, and sold the device into the stream of commerce, the device was defective and presented a substantial danger to users of the product when put to its intended and reasonably anticipated use, namely as an implanted port/catheter system to administer intravenous fluids and/or medications. Defendant failed to adequately warn of the device's known or reasonably scientifically knowable dangerous propensities, and further failed to adequately provide instructions on the safe and proper use of the device.

95. Defendant failed to timely and reasonably warn of material facts regarding the safety and efficacy of the Smart Port; no reasonable health care provider, including Plaintiff's, or patient would have used the device in the manner directed, had those facts been made known to the prescribing healthcare providers or the consumers of the device.

96. Defendant knew or should have known at the time it manufactured, labeled, distributed, and sold the Smart Port that was implanted into Plaintiff that the Smart Port posed a significant and higher risk than other similar devices of device failure and resulting serious injuries.

97. The warnings, labels, and instructions provided by the Defendant at all times relevant to this action, are and were inaccurate, intentionally misleading, and misinformed and misrepresented the risks and benefits and lack of safety and efficacy associated with the device.

98. The health risks associated with the device as described herein are of such a nature

that ordinary consumers would not have readily recognized the potential harm.

99. The Smart Port, which was designed, manufactured, prepared, compounded, assembled, processed, marketed, labeled, distributed, and sold into the stream of commerce by Defendant, was defective at the time of release into the stream of commerce due to inadequate warnings, labeling and/or instructions accompanying the product.

100. When Plaintiff was implanted with the device, Defendant failed to provide adequate warnings, instructions, or labels regarding the severity and extent of health risks posed by the device, as discussed herein.

101. Defendant intentionally underreported the number and nature of adverse events associated with fracture of the devices to Plaintiff's health care providers, as well as the FDA.

102. Neither Plaintiff nor her health care providers knew of the substantial danger associated with the intended and foreseeable use of the device as described herein.

103. Plaintiff and her health care providers used the Smart Port in a normal, customary, intended, and foreseeable manner, namely as a surgically placed device used to make it easier to deliver medications directly into the patient's bloodstream.

104. Upon information and belief, the defective and dangerous condition of the Smart Port, including the one implanted into Plaintiff, existed at the time they were manufactured, prepared, compounded, assembled, processed, marketed, labeled, distributed, and sold by Defendant to distributors and/or healthcare professionals or organizations.

105. Upon information and belief, the Smart Port implanted in Plaintiff was in the same condition as when it was manufactured, inspected, marketed, labeled, promoted, distributed and sold by Defendant.

106. Defendant's lack of sufficient warning and/or instructions was the direct and proximate cause of Plaintiff's serious physical injuries, and economic damages in an amount to be determined at trial. In other words, had Defendant provided adequate warnings, Plaintiff and her physicians would not have used the Smart Port

**<u>COUNT VI: STRICT PRODUCTS LIABILITY – DESIGN DEFECT</u>**

(Against Defendant AngioDynamics, Inc.)

107. Plaintiff incorporates by reference the preceding paragraphs of this Complaint as if fully set forth herein.

108. Defendant supplied, manufactured, sold, distributed and/or otherwise placed into the stream of commerce the Smart Port implanted into Plaintiff.

109. The Smart Port implanted in Plaintiff was not reasonably safe for its intended use and was defective with respect to its design.

110. The Smart Port was in a defective condition and was defective in its design in that when it left the possession of Defendant, it was not safe for its anticipated use and safer, more reasonable alternative designs existed that could have been utilized by Defendant.

111. The Smart Port was unreasonably dangerous to the user or consumer, taking into

consideration the utility of said product and the risks involved in its use. The foreseeable risks associated with the design of the product were more dangerous than a reasonably prudent consumer such as Plaintiff and/or her physicians would expect when the product was used for its normal and intended purpose.

112. The Smart Port was expected to and did reach the consumer without substantial change in the condition in which it was supplied, distributed, sold and/or otherwise placed into the stream of commerce.

113. A reasonably prudent medical device manufacturer would not have placed the Smart Port with its defective design into the stream of commerce.

114. The design defects in the Smart Port were not known, knowable and/or reasonably apparent to Plaintiff and/or her physician or discoverable upon any reasonable examination.

115. The Smart Port was used and implanted in the manner in which it was intended to be used and implanted by Defendant pursuant to the instructions for use and the product specifications provided by Defendant.

116. Defendant is strictly liable to the Plaintiff for designing, manufacturing, marketing, labeling, packaging and selling a defective product.

117. As a direct and proximate result of the Smart Port's aforementioned defects, the Plaintiff was caused and/or in the future will be caused to suffer severe personal injuries, pain and suffering, severe emotional distress, financial or economic loss, including, but not limited to,

obligations for medical services and expenses, and other damages.

**COUNT VII: STRICT LIABILITY – MANUFACTURING DEFECT**
(Against Defendant AngioDynamics, Inc.)

118. Plaintiff incorporates the preceding paragraphs as if set out fully herein.

119. The Smart Port's condition was defective and unreasonably dangerous as a result of manufacturing defect.

120. The Smart Port's defective and unreasonably dangerous condition existed at the time the Smart Port left Defendant's control.

121. The defective and unreasonably dangerous Smart Port was the proximate cause of Plaintiff's injuries and damages described in this Complaint.

122. Due to the manufacturing defects, the Smart Port was inherently dangerous and defective, unfit and unsafe when put to use in an intended or reasonably foreseeable manner, and did not meet or perform to the expectations of Plaintiff and Plaintiff's healthcare providers.

123. The Smart Port's risks to Plaintiff's health and safety were (1) far more significant and devastating than the risks posed by other products and procedures available to treat Plaintiff's corresponding medical conditions; and (2) far outweigh the utility of the Smart Port at issue.

124. The manufacturing defects of the Smart Port implanted into Plaintiff existed at the time it left Defendant's control and the Smart Port was in the substantially same condition when it was surgically implanted into Plaintiff.

125. At all times relevant to this action, Plaintiff and Plaintiff's healthcare providers used

the Smart Port for its intended use or in a reasonably foreseeable manner.

126. As a direct and proximate result of the Device's manufacturing defects, Plaintiff was injured and has suffered, and will continue to suffer, severe physical pain and injuries which are permanent and lasting in nature, emotional distress, loss of capacity for the enjoyment of life, medical expenses, and economic loss as alleged herein. These damages have occurred in the past and will continue into the future.

127. Defendant is strictly liable in tort to Plaintiff for its wrongful conduct.

**COUNT VIII: BREACH OF IMPLIED WARRANTY**
(Against Defendant AngioDynamics, Inc.)

128. Plaintiff incorporates by reference the preceding paragraphs of this Complaint as if fully set forth herein.

129. Defendant impliedly warranted that the Smart Port was merchantable and fit for the ordinary purposes for which it was intended.

130. When the Smart Port was implanted in the Plaintiff, it was being used for the ordinary purposes for which it was intended.

131. The Plaintiff, individually and/or by and through her physician, relied upon Defendant's implied warranties of merchantability in consenting to have the Smart Port implanted in her.

132. Privity exists between Plaintiff because Plaintiff's physicians acted as Plaintiff's

purchasing agents in the subject transaction and/or because Plaintiff was a third-party beneficiary of the subject contract.

133. Defendant breached these implied warranties of merchantability because the Smart Port implanted in Plaintiff was neither merchantable nor suited for its intended uses as warranted in that the device varied from its intended specifications, which included, but are not limited to, variances in the following respects:

a. Defendant's manufacturing process in constructing the catheter of the Smart Port implanted in Plaintiff involved too high of a concentration of barium sulfate particles for the polymer formulation, which led to improperly high viscosity of the admixed polyurethane before polymerization and causing improper mixing of barium sulfate particles within the polymer matrix;

b. Defendant knew or should have known barium sulfate is known to contribute to a reduction in the mechanical integrity of the polyurethane in its product, the Smart Port, as the barium sulfate particles dissociate from the surface of the catheter over time; and

c. These defects led to a heterogenous modified polymer that included microfractures and weakened areas at the location of the higher barium sulfate concentration that ultimately led to the collection and proliferation of blood products, thereby drastically increasing the risk of biofilm, infection, sepsis, and port erosion.

134. Defendant's breaches of their implied warranties resulted in the implantation of an

unreasonably dangerous and defective product, the Smart Port, into Plaintiff's body, placing said Plaintiff's health and safety in jeopardy.

135. The Smart Port was sold to Plaintiff's health care providers for implantation in patients, such as Plaintiff.

136. As a direct and proximate result of Defendant's breaches of the aforementioned implied warranties, the Plaintiff was caused and/or in the future will be caused to suffer severe personal injuries, pain and suffering, severe emotional distress, financial or economic loss, including, but not limited to, obligations for medical services and expenses, and other damages.

137. Upon information and belief, Plaintiff's healthcare providers sent notice to Defendant of the adverse event that occurred to Plaintiff and thus, the nonconformity of the Smart Port, within a reasonable period of time following discovery of the breach of warranty and before suit was filed.

## COUNT IX: BREACH OF EXPRESS WARRANTY

(Against Defendant AngioDynamics)

138. Plaintiff incorporates by reference the preceding paragraphs of this Complaint as if fully set forth herein.

139. Defendant through its officers, directors, agents, representatives, and written literature and packaging, and written and media advertisement, expressly warranted that the Smart Port was safe and fit for use by consumers, was of merchantable quality, did not produce dangerous

side effects, and was adequately tested and fit for its intended use.

140. The Smart Port does not conform to the Defendant's express representations because it is not reasonably safe, has numerous serious side effects, and causes severe and permanent injury.

114. Defendant further breached express representations and warranties made to Plaintiff, her physicians and healthcare providers with respect to the Smart Port implanted in Plaintiff in the following respects:

a. Defendant represented to Plaintiff and her physicians and healthcare providers through labeling, advertising, marketing materials, detail persons, seminar presentations, publications, notice letters, and regulatory submissions among other ways that the Defendant's Smart Port was safe, meanwhile Defendant fraudulently withheld and concealed information about the substantial risks of serious injury associated with using Smart Port;

b. Defendant represented to Plaintiff and her physicians and healthcare providers that the Defendant's Smart Port was as safe and/or safer than other alternative procedures and devices then on the market, meanwhile Defendant fraudulently concealed information that demonstrated that Smart Port was not safer than alternative therapies and products available on the market; and

c. Defendant represented to Plaintiff and her physicians and healthcare providers that the Defendant's Smart Port was more efficacious than other alternative procedures, therapies and/or devices. Meanwhile Defendant fraudulently concealed information, regarding the true efficacy of Smart Port.

141. At all relevant times, the Smart Port did not perform as safely as an ordinary consumer would expect, when used as intended or in a reasonably foreseeable manner.

142. Plaintiff, her physicians, and the medical community reasonably relied upon the Defendant's express warranties for the Smart Port.

143. Plaintiff was intended consumer of the Smart Port when Defendant made the warranties set forth herein, and such warranties were made to benefit Plaintiff as a patient and consumer.

144. At all relevant times, the Smart Port was used on Plaintiff by Plaintiff's physicians for the purpose and in the manner intended by Defendant.

145. Plaintiff and Plaintiff's physicians, by the use of reasonable care, could not have discovered the breached warranty and realized its danger.

146. As a direct and proximate result of the breach of Defendant's express warranties, Plaintiff has suffered, and will continue to suffer, severe physical pain and injuries which are permanent and lasting in nature, emotional distress, loss of the capacity for the enjoyment of life, medical and nursing expenses, surgical expenses, and economic loss as alleged herein. These

damages have occurred in the past and will continue into the future.

147. Upon information and belief, Plaintiff's healthcare providers sent notice to Defendant of the adverse event that occurred to Plaintiff and thus, the nonconformity of the Smart Port, within a reasonable period of time following discovery of the breach of warranty and before suit was filed.

**COUNT X: COMMON LAW FRAUD**
(Against Defendant AngioDynamics, Inc.)

148. Plaintiff incorporates the preceding paragraphs as if set out fully herein.

149. Defendant represented and continues to represent to Plaintiff's healthcare providers and to Plaintiff that the Smart Port was tested and found to be safe and effective. Defendant had sole access to material facts concerning the substantial danger and/or potential risks associated with the Smart Port at issue, including, but not limited to, the catheter fracture and cardiac migration, and other serious and life-threatening adverse events associated with the Smart Port.

150. Defendant's representations were, in fact, false. When Defendant made its representations to Plaintiff's healthcare providers and to Plaintiff, Defendant knew or should have known that the Smart Port was not adequately tested and/or dangerous or was likely to be dangerous when put to use in a reasonably foreseeable manner.

151. Moreover, Defendant knew or should have known that those representations were false, and Defendant willfully, wantonly, and recklessly disregarded the inaccuracies and falsehood in its representations and the dangers and health risks to Plaintiff.

152. In representations to Plaintiff and/or to Plaintiff's healthcare providers, Defendant fraudulently concealed and intentionally or recklessly omitted the following material information:

a. The Smart Port was inherently dangerous and defective, unfit and unsafe for its intended and reasonably foreseeable use and did not meet or perform to the user's intended expectations;

b. Patients implanted with the Smart Port had an increased risk of suffering serious complications, including but not limited to: death, hemorrhage, catheter fracture and cardiac migration, thromboembolism, serious infections, cardiac arrhythmia, severe and persistent pain, and perforations of tissue, vessels and organs, and/or the need for additional surgeries to remove the defective and/or fractured Smart Port;

c. The Smart Port posed a significant and higher risk than other similar devices of device failure and resulting serious and life-threatening injuries;

d. The inadequate research and testing of the Smart Port;

e. The true quantitative or qualitative risk and the true extent of catheter erosion, catheter fracture and cardiac migration, and other serious and life-threatening adverse events associated with the Smart Port;

f. The risk of catheter erosion, catheter fracture and cardiac migration, and

other serious and life-threatening adverse events associated with the Smart Port was higher in cases where the Smart Port stays in place for longer than a year;

g. The Smart Port should be closely monitored in cases where it is left in place for over a year;

h. The Smart Port raised the risk of catheter erosion catheter fracture and cardiac migration, etc. by virtue of the catheter defective design and composition; and

i. The number and nature of serious and life-threatening adverse events related to the Smart Port.

153. Defendant's misrepresentations, concealment, and omissions of material facts regarding the Smart Port's safety and efficacy were made through: product inserts, the *Instructions For Use*, training materials, websites, information presented at medical and professional meetings, information disseminated by sales representatives to Plaintiff's physicians and other Plaintiff's healthcare providers, regulatory submissions, Adverse Event Reports, other reports, press releases, advertising campaigns, television commercials, print advertisements, billboards, and other commercial media.

154. Defendant's misrepresentations, concealment, and omissions of material facts regarding the Smart Port's safety and efficacy were made to purposefully, willfully, wantonly,

and/or recklessly with an intent to mislead Plaintiff and Plaintiff's healthcare providers, into recommending, prescribing, dispensing and purchasing, and implanting the Smart Port at issue.

155. At the time Defendant made these false representations, Plaintiff's healthcare providers and Plaintiff were unaware these representations were false, reasonably believed the representations were true, and reasonably relied on these representations to Plaintiff's detriment.

156. Plaintiff would not have consented to be implanted with the Smart Port if Defendant had made true representations regarding the Smart Port's safety and efficacy.

157. Upon information and belief, Plaintiff's prescribing physicians would not have implanted the Smart Port into Plaintiff if Defendant had made true representations regarding the Smart Port's safety and efficacy.

158. In reasonable reliance upon Defendant's false representations, Plaintiff was induced to use/be implanted with the Smart Port and did in fact use/was implanted with the Smart Port which caused Plaintiff's severe and permanent personal injuries and damages, including, but not limited to, catheter fracture and cardiac migration, and the development of the Smart Port's catheter fragment-related emboli, and other related injuries and damages.

159. As a direct and proximate result of Defendant's wrongful conduct, Plaintiff was injured and has suffered, and will continue to suffer, severe physical pain and injuries which are permanent and lasting in nature, emotional distress, loss of the capacity for the enjoyment of life, medical expenses, and economic loss as alleged herein. These damages have occurred in the past

and will continue into the future.

**COUNT XI: FRAUDULENT CONCEALMENT**

(Against Defendant AngioDynamics, Inc.)

160. Plaintiff incorporates by reference the preceding paragraphs of this Complaint as if fully set forth herein.

161. Defendant made false statements and representations to Plaintiff and her healthcare providers concerning the Smart Port product implanted in Plaintiff.

162. Defendant engaged in and fraudulently concealed information with respect to the Smart Port in the following respects:

a. Defendant represented through the labeling, advertising, marketing materials, seminar presentations, publications, notice letters, and regulatory submissions that the Smart Port was safe and fraudulently withheld and concealed information about the substantial risks of using the Smart Port, including, but not limited to, its heightened propensity to precipitate infection and port erosion, and cause complications;

b. Defendant represented that the Smart Port was safer than other alternative systems and fraudulently concealed information which demonstrated that the Smart Port was not safer than alternatives available on the market;

c. Defendant concealed that it knew of the Smart Port's dangerous propensity to precipitate infection and port erosion, and was causing complications from causes other than the manner in which the implanting physician implanted the device; and

d. That frequency of these failures and the severity of injuries were substantially worse than had been reported.

163. Defendant had knowledge that the representations they made concerning the Smart Port, as stated above, were false.

164. Defendant had sole access to material facts concerning the dangers and unreasonable risks of the Smart Port.

165. The concealment of information by the Defendant about the risks of the Smart Port was intentional.

166. The concealment of information and the misrepresentations about the Smart Port was made by the Defendant with the intent that Plaintiff's health care providers and Plaintiff rely upon them.

167. Plaintiff and her physicians relied upon the representations and were unaware of the substantial risks of the Smart Port which the Defendant concealed from the public, including Plaintiff and her physicians.

168. As a direct and proximate result of the Defendant's actions, omissions and misrepresentations, Plaintiff has suffered, and will continue to suffer, severe physical pain and

injuries which are permanent and lasting in nature, emotional distress, loss of the capacity for the enjoyment of life, medical and nursing expenses, surgical expenses, and economic loss as alleged herein. These damages have occurred in the past and will continue into the future.

169. The Defendant acted with oppression, fraud, and malice towards Plaintiff, who accordingly requests that the trier of fact, in the exercise of its sound discretion, award additional damages for the sake of example and for the purpose of punishing Defendant for their conduct, in an amount sufficiently large to be an example to others, and to deter this Defendant and others from engaging in similar conduct in the future.

170. Had Defendant not concealed this information, neither Plaintiff's nor her health care providers would have consented to using the Smart Port placed in Plaintiff.

## COUNT XII: NEGLIGENT MISREPRESENTATION

(Against Defendant AngioDynamics, Inc.)

171. Plaintiff incorporates the preceding paragraphs as if set out fully herein.

172. Defendant owed Plaintiff's healthcare providers and Plaintiff a duty to disclose material facts including, but not limited to, whether the Smart Port had been adequately tested and the facts concerning the substantial dangers and/or potential risks associated with the Smart Port when put to use in a reasonably foreseeable manner, including, but not limited to, catheter fracture and cardiac migration, and the development of the Smart Port's catheter fragment-related emboli.

173. Defendant breached their duty in representing and continuing to represent to Plaintiff's healthcare providers and to Plaintiff, that the Smart Port was tested and found to be safe

and effective.

174. Defendant knew or should have known that the Smart Port was not adequately tested and that it was dangerous or was likely to be dangerous when put to use in a reasonably foreseeable manner. Defendant were careless or negligent in ascertaining the truth of their statements concerning safety and efficacy of the Smart Port.

175. Defendant's misrepresentations of material facts regarding the Smart Port's safety and efficacy were made with an intent to induce Plaintiff's healthcare providers into recommending, prescribing, dispensing, and purchasing the Smart Port, and with an intent to induce Plaintiff to agree to be implanted with the Smart Port.

176. An ordinary consumer would have acted or reasonably relied upon Defendant's misrepresentations of material facts regarding the Smart Port's safety and efficacy.

177. Plaintiff justifiably acted or justifiably relied upon Defendant's misrepresentations of material facts to her detriment, and was induced to, and did use/was implanted with the Smart Port at issue, which caused Plaintiff's severe and permanent injuries and damages. Plaintiff's injuries and damages resulted from her reliance when Defendant was under a duty to communicate accurate information concerning the Smart Port's safety and efficacy to Plaintiff's healthcare providers and to Plaintiff.

178. As a direct and proximate result of Defendant's wrongful conduct, Plaintiff was injured and has suffered, and will continue to suffer, severe physical pain and injuries which are

permanent and lasting in nature, emotional distress, loss of the capacity for the enjoyment of life, medical expenses, and economic loss as alleged herein. These damages have occurred in the past and will continue into the future.

## COUNT XIII: VIOLATION OF THE OREGON UNLAWFUL TRADE PRACTICES ACT

## OR. REV. STAT. § 646.608

(Against Defendant AngioDynamics, Inc.)

179. Plaintiff incorporates by reference the preceding paragraphs of this Complaint as if fully set forth herein.

180. At all times relevant to this action, Defendant's use of deception, fraud, false pretense, false promise, misrepresentation, unfair practice, and the concealment, suppression, and omission of material facts in connection with the Smart Port-associated danger and increased risks of catheter erosion, catheter fracture and cardiac migration, and the development of the Smart Port catheter fragment-related emboli, and other serious and life-threatening adverse events, have constituted and continue to constitute unlawful business practices under Oregon statutory law as provided in Or. Rev. Stat. § 646.608(1)(e).

181. At all times relevant to this action, Defendant performed deceptive, fraudulent, and unfair practices within the meaning of Or. Rev. Stat. § 646.608(1)(e) by representing that the Smart Port is of a particular standard, quality, or grade, when it is of another, as well as advertising the Smart Port with intent not to sell it as advertised, regarding the safety and efficacy of their Smart

Port.

182. Plaintiff is entitled to bring a civil action to recover damages for Defendant's violation of Or. Rev. Stat. § 646.608(1)(e) under Or. Rev. Stat. § 646.638.

183. Plaintiff's purchase of the Smart Port was primarily for personal use, as a medical device implanted into her body.

184. Plaintiff, relying on the deceptive, fraudulent, unfair misrepresentations of the Defendant, acted as a reasonable consumer would in light of all circumstances by trusting that the medical device she was having implanted in her body would be safe, effective, and would not put in her more danger.

185. Defendant intended Plaintiff to rely on their conduct to agree to be implanted with the Smart Port at issue.

186. Defendant's unfair or deceptive acts or practices, described in this Complaint, occurred in the course of conduct involving commerce as Defendant, the manufacturers, distributors, and/or sellers of the Smart Port at issue conducted the following activities outlined under Or. Rev. Stat. § 646.608(1)(e), as such activities related to the Smart Port: "represents that real estate, goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, quantities or qualities that the real estate, goods or services do not have…"

187. Plaintiff's damages described in this Complaint are proximately resulting from the deception.

188. As a proximate result of the Defendant's unfair or deceptive acts or practices, Plaintiff was injured and has suffered, and will continue to suffer, severe physical pain, as well as emotional distress and economic loss as alleged herein.

**COUNT XIV: GROSS NEGLIGENCE**
(Against Defendant AngioDynamics, Inc.)

189. Plaintiff incorporates the preceding paragraphs as if set forth fully herein.

190. Defendant intentionally, willfully, wantonly, and recklessly misrepresented facts and information to Plaintiff's healthcare providers and to Plaintiff, by making intentionally false and fraudulent misrepresentations about the safety and efficacy of the Smart Port. At all times relevant to this action, Defendant's conduct represented an extreme departure from the ordinary standard of care.

191. Defendant intentionally, willfully, wantonly, and recklessly concealed the material facts and information regarding the serious risks of harm associated with the implantation of the Smart Port, including, but not limited to, the risks of catheter erosion, catheter fracture and cardiac migration, and the development of the Smart Port catheter fragment-related emboli, etc., and intentionally, willfully, wantonly, and recklessly downplayed the type, nature, and extent of the serious and life-threatening adverse events of being implanted with the Smart Port, despite Defendant's full knowledge and awareness of the serious and life-threatening adverse events and risks associated with use of the Smart Port. Defendant further intentionally, willfully, wantonly, and recklessly sought to mislead Plaintiff's healthcare providers and Plaintiff regarding the cause

of catheter erosion, catheter fracture and cardiac migration, the development of the Smart Port catheter fragment-related emboli, and other serious and life threatening adverse events.

192. Defendant had knowledge of, and was in possession of, evidence demonstrating that the Smart Port caused serious and life-threatening adverse events. Defendant continued to market the Smart Port by providing false and misleading information with regard to the Smart Port's safety and efficacy to the regulatory agencies, the medical community, and the Plaintiff's healthcare providers, and to Plaintiff, notwithstanding Defendant's knowledge of the true serious adverse events associated with the Smart Port, Defendant failed to provide accurate information and warnings to the Plaintiff's healthcare providers that would have dissuaded Plaintiff's prescribing physician from surgically implanting the Smart Port and Plaintiff from agreeing to being implanted with the Smart Port, thus depriving Plaintiff's healthcare providers, including, but not limited to Plaintiff's prescribing physician and Plaintiff from weighing the true risks against the benefits of prescribing and implanting the Smart Port at issue.

193. At all times relevant to this action, Defendant's willful, wanton, and reckless conduct affected Plaintiff's life and safety, and Plaintiff's rights as Defendant acted in reckless disregard of Plaintiff's safety and rights.

194. Plaintiff therefore will seek to assert claims for Punitive damages at the appropriate time under governing law in an amount within the jurisdictional limits of the Court.

195. Defendant's willful, wanton, and reckless acts and omissions constitute gross

negligence that proximately caused Plaintiff's injuries and damages.

## PRAYER

**WHEREFORE**, Plaintiff prays for judgment against the Defendant as follows:

a. Judgment be entered against Defendant on all causes of action of this Complaint;

b. Plaintiff be awarded full, fair, and complete recovery for all claims and causes of action relevant to this action;

c. Compensatory damages to Plaintiff for past, present, and future damages, including, but not limited to, pain and suffering, mental anguish, disfigurement, impairment, medical expenses, lost wages, lost earning capacity, and loss of household services together with interest and costs as provided by law;

d. Plaintiff be awarded costs and attorney's fees in connection with Plaintiff's Oregon Unfair Trade Practices Act under Or. Rev. Stat. § 646.608.

e. Awarding pre-judgment and post-judgment interest to the Plaintiff;

f. Awarding the costs and the expenses of this litigation to the Plaintiff;

g. For such other and further relief as the court may deem just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiff hereby demands trial by jury on all issues.

Respectfully submitted,

Ryan J. Cavanaugh (0079996)
Constant Legal Group, LLP
737 Bolivar Rd., Ste. 440
Cleveland, OH 44115
(216) 815-9000
(216) 274-9365 (facsimile)
ryan@constantllp.com

*Attorney for Plaintiff*